IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

SULEIMAN MOHAMMED MASOUD,

                        Petitioner,            **Report and Recommendation**

    v.                                      **No. 08-CV-6345(CJS)(VEB)**

U.S. Attorney General MICHAELMUKASEY;
Secretary of the Department of Homeland Security
MICHAEL CHERTOFF; Field Office Director
CHARLES MULE; and Director of Buffalo
Federal Detention Facility MARTIN HERRON,

                        Respondents.
_____

## I.    Introduction

*Pro se* petitioner Suleiman Mohammed Masoud ("Masoud"), an alien under a final order of removal, commenced the within habeas proceeding on July 29, 2008, alleging that his detention in administrative custody by the Department of Homeland Services Immigration and Customs Enforcement("DHS") pursuant to INA § 241, 8 U.S.C. § 1231 violates the federal immigration statute, as well as substantive and procedural due process. (Petition, Docket No. 1). This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1) for, *inter alia*, the issuance of a report and recommendation regarding the disposition of Masoud's petition. Respondent has filed a motion to dismiss, arguing that the petition should be denied because Masoud has been released under supervision since the filing of his petition, rendering this proceeding moot. Masoud has not filed any papers in opposition to respondent's motion to dismiss.

For the reasons that follow, I agree with respondent and accordingly recommend dismissal of the petition without prejudice.

**II.     Facts**

Masoud was encountered by an immigration inspector at the Point of Entry/Peace Bridge Buffalo, New York, on June 1, 2002, after he was, reportedly, refused admission into Canada. At the inspection at the Peace Bridge, Masoud expressed a fear of return to his native country, Zanzibar. Masoud alleges that he fled Zanzibar and came to the United States in 1988. Masoud was placed in removal proceedings by a Notice to Appear ("NTA"), dated June 1, 2002, which charged him, pursuant to Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i), 8 U.S.C. § 1182 a)(6)(A)(i), with being subject to removal from the United States as an alien present in the United States without being admitted or paroled. He was released on his own recognizance.

When Masoud failed to appear for an immigration removal hearing on September 30, 2002, it was conducted *in absentia*, after an immigration judge ("IJ") made a finding that proper notice of the hearing had been provided to Masoud. Following the hearing, the IJ ordered Masoud removed from the United States to Tanzania.

On or about June 7, 2002, Masoud was paroled into Canada to pursue a refugee claim. On February 27, 2003, Canada Immigration denied Masoud's refugee claim. On March 10, 2003, Masoud filed an appeal which was later denied. After Masoud was denied refugee status in Canada, he was deported to the United States by Canadian Immigration authorities on June 22, 2004.  On June 22, 2004, Masoud was placed into DHS custody pursuant to a Warrant of Removal/Deportation that had been issued  on October 31, 2002, based upon the IJ's order of removal.

At the time he filed his habeas petition in July 2008, and at the time respondents filed

their answer and return, Masoud wasdetained in the custody of DHS at the Buffalo Federal Detention Center in Batavia, New York, pending his removal from the United States.

On July 2, 2004, DHS sent a presentation packet to the Consulate General of Tanzania in Washington, D.C. ("the Consulate"), to request a travel document for Masoud's removal to Tanzania. In accordance with immigration regulations, DHS reviewed Masoud's custody status in September 2004. On October 6, 2004, Masoud was notified that DHS determined to continue detention. Masoud was further notified that future custody reviews would be conducted by DHS Headquarters Post-order Detention Unit (HQPDU).

Masoud filed a motion to reopen his removal proceedings which was denied by the IJ on February 25, 2005. Masoud appealed the decision to the Board of Immigration Appeals ("BIA").

By letter dated March 7, 2005, DHS forwarded a new presentation packet to the Consulate again requesting a travel document for Masoud's removal. On March 21, 2005, during his interview with a representative of the Consulate, Masoud advised that he had a motion to reopen the order of removal pending before the BIA. The representative terminated the interview and advised DHS that no travel document would be issued until after the completion of Masoud's legal proceedings. DHS informed the representative that Masoud had no stay of removal in place and requested that the Consulate's representative to issue the travel document notwithstanding Masoud's motion to reopen.

On April 27, 2005, the Consulate advised DHS that based on past experience with a removal under similar circumstances, he was reluctant to issue a travel document while Masoud had pending litigation.

On May 11, 2005, deportation staff at the Buffalo Federal Detention Facility sent a request to DHS Headquarters Travel Document Unit for assistance in obtaining a travel

document for Masoud.

On June 22, 2005, the BIA remanded the proceedings to the IJ for further consideration of Masoud's motion to reopen. Upon remand, the IJ denied Masoud's motion to reopen on July 12, 2005. Masoud appealed that denial to the BIA and, on November 18, 2005, the BIA dismissed Masoud's appeal, stating that it agreed with the IJ's conclusions that Masoud had been properly notified of his removal hearing and that Masoud had failed to show exceptional circumstances to excuse his failure to appear for the hearing.

On December 5, 2005, Masoud filed a petition for review and a motion for stay of removal in the United States Court of Appeals for the Second Circuit. In light of that stay, DHS could not execute the immigration order of removal. *See Mosoud v. Gonzales*, 2d Cir. Docket No. 05-6454-ag.[1]

Respondents aver that reviews of Masoud's custody status have been conducted in accordance with the immigration regulations, in October 2004, March 2006, March 2007 and March 2008. Following each custody review, DHS notified Masoud that his detention would be continued because, among other reasons, the Government considered a flight risk based on his failure to appear for an immigration removal hearing.

In the meantime, on November 29, 2007, the Second Circuit Court issued an Order dismissing Masoud's petition for review; on March 13, 2008, the Order was issued as a Mandate. On March 19, 2008, Masoud was notified by DHS that his custody had been reviewed and DHS determined that his detention in DHS custody would be continued. The March 2008 Decision to Continue Detention noted that Masoud had failed to meet his obligation to assist

---

[1] Because Masoud sought a request for a stay of removal with his petition for review in the Second Circuit Court of Appeals, Masoud was subject to an informal agreement between DHS and that court which provides that DHS will not remove aliens who have sought a stay of removal with their petitions for review.

DHS to effectuate his removal from the United States and that he had been the subject of several disciplinary reports. The decision also advised Masoud of his obligations to comply and cooperate and that willful failure to do so could lead to his being criminally prosecuted.

Following the March 2008 custody review, DHS sent a third presentation packet to the Embassy of the Republic of Tanzania ("the Tanzanian Embassy") on May 14, 2008, in order to obtain a travel document for Masoud's removal. On August 19, 2008, a representative from the Tanzanian Embassy asked that DHS provide another request for a travel document and a copy of a flight itinerary for Masoud's return to Tanzania. On August 20, 2008, DHS sent the requested information to the Tanzanian Embassy. DHS made flight itinerary arrangements for Masoud to be removed from the United States, and he was thereafter scheduled to be removed from the United States on September 29, 2008.

Before DHS could execute his removal at the end of September, Masoud's case was reviewed by the ICE Buffalo Office of Litigation and Legal Advice (hereinafter "ICE counsel") in connection with the instant habeas petition, and ICE counsel determined that pursuant to a recent BIA decision, Masoud was and is properly considered an "arriving alien" from Canada. *See In re R-D-*, 24 I. & N. 221 (July 3, 2007). ICE counsel has, consequently, made a motion to reopen Masoud's removal proceedings.

In light of the pending motion to reopen Masoud's removal proceedings, Masoud's removal to Tanzania scheduled for September 29, 2008 was cancelled. Respondents aver that the removal was postponed pending a determination of whether Masoud's removal proceedings will be reopened and further administrative proceedings held. Respondents assert that if Masoud's administrative removal proceedings are reopened, he will no longer be subject to a final order removal.

On August 14, 2008, Masoud was notified that his custody status was to be reviewed on or about September 20, 2008. When respondents filed their answer on October 9, 2008 they noted that this review had been postponed.

On November 13, 2008, respondents filed a motion to dismiss the petition. (Docket No. 5). Respondents stated that on November 7, 2008, Masoud was released from administrative custody pursuant to an Order of Supervision. *See* Affidavit of Gail Y. Mitchell ("Mitchell Aff."), ¶ 4.1 Respondents argue that the relief that Masoud seeks in his petition in this Court (i.e., release from DHS custody) has been granted in the form of the Order of Supervision. Respondent therefore have moved the Court for an order dismissing the petition on grounds that it has been rendered moot by Masoud's release from detention under an order of supervision, which Masoud signed The Order of Supervision requires, among other things, that Masoud not travel outside of New York State for more than 48 hours unless he notifies DHS of his travel plans, and that Masoud appear in person on November 25, 2008, to DHS offices in New York City. He is presently residing in the Bronx.

### III. Discussion

#### A. Jurisdiction

In recent years, through the passage of IIRIRA and the Antiterrorism and Effective Death Penalty Act of 1996, Congress has sought to restrict the scope of judicial review of deportation or removal orders involving criminal aliens. *See*, *e.g.*, *Henderson*, 157 F.3d at 118. Despite that effort, the Supreme Court has recently reaffirmed that federal courts retain the jurisdiction to hear statutory and constitutional challenges to the Attorney General's authority to detain an alien after the entry of a final removal order. *See Zaadvydas v. Davis*, 533 U.S. 678, 688 (2001). *See also Henderson*, 157 F.3d at 122 (2d Cir.1998) ("[W]e hold that the federal courts have jurisdiction

under § 2241 to grant writs of habeas corpus to aliens when those aliens are 'in custody in violation of the Constitution or laws or treaties of the United States.' "). Respondents do not dispute that this Court has jurisdiction to entertain Masoud's petition pursuant to 28 U.S.C. § 2241.

### B. The Habeas "In Custody" Requirement

Section 2241(c)(1) of Title 28 of the United States Code provides that district courts may consider habeas petitions from prisoners "in custody under or by color of the authority of the United States." 28 U.S.C. § 2241(c)(1). "The 'in custody' requirement is satisfied if the petitioner files the habeas petition before being deported." *So v. Reno*, 251 F. Supp.2d 1112, 1120 (E.D.N.Y. 2003) (citing *Gonzalez v. INS*, No. 01 Civ. 6229(HB), 2002 WL 31444952, at *3 (S.D.N.Y. Oct. 31, 2002) (stating that petitioner satisfies "in custody" requirement of 28 U.S.C. § 2241 so long as he is in physical custody at the time the petition is filed even if petitioner is later deported)).

### C. Mootness

"'[A] case is moot when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)); *accord County of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000); *New York City Employees' Retirement System v. Dole*, 969 F.2d 1430, 1433 (2d Cir.1992). When a habeas petitioner has been released from custody after filing a petition, the petition may be moot, and the relevant inquiry becomes whether the case still presents a case or controversy under Article III, § 2 of the U.S. Constitution. *Spencer*, 523 U.S. at 7. Where a habeas petition is based upon a criminal conviction, the cause is not rendered moot by the petitioner's release from imprisonment, if the petitioner suffers any

"collateral consequences" of the conviction. *Spencer*, 523 U.S. at 7. The Supreme Court has explained that

> when the challenged conduct ceases such that "'there is no reasonable expectation that the wrong will be repeated,'" *United States v. W.T. Grant Co.*, 345 U.S. 629, 633, 73 S. Ct. 894, 97 L. Ed. 1303 (1953), then it becomes impossible for the court to grant "'any effectual relief whatever' to [the] prevailing party," *Church of Scientology of Cal. v. United States,* 506 U.S. 9, 12, 113 S. Ct. 447, 121 L. Ed.2d 313 (1992) (quoting *Mills v. Green*, 159 U.S. 651, 653, 16 S. Ct. 132, 40 L. Ed. 293 (1895)). In that case, any opinion as to the legality of the challenged action would be advisory.

*County of Erie v. Pap's A.M.*, 529 U.S. at 287.

Although Masoud's subsequent release on supervision does not necessarily moot his petition, for his claim to survive he must show "collateral consequences adequate to meet Article III's injury-in-fact requirement." *Spencer v. Kemna*, 523 U.S. 1, 14 (1998)). Here, by his habeas corpus petition, Masoud has only challenged the lawfulness of his administrative detention; pursuant to the REAL ID Act of 2005, this is the only type of claim which this District Court has jurisdiction to review.[2] The sole relief Masoud seeks in his petition is release from custody. The issue in this habeas proceeding, which is based solely on allegedly unlawful detention, and not the removal order from which the detention flowed, is whether Masoud suffers from any "collateral consequences" of detention now that he has been released during the pendency of his petition.

The district courts in this Circuit to have considered the issue have found that where an

---

2   If petitioner sought to challenge his removal, this Court would be precluded from exercising jurisdiction over this Petition by section 106(a)(1)(B) of REAL ID Act of 2005, 8 U.S.C. § 1252(a)(5), which "unequivocally eliminates habeas corpus review of orders of removal." *Marquez-Almanzar v. Immigration & Naturalization Serv.*, 418 F.3d 210, 215 (2d Cir. 2005).  However, "[w]hile Congress specifically eliminated the district courts' habeas corpus jurisdiction over review of removal orders, the REAL ID Act does not affect the district courts' jurisdiction over review of other habeas corpus claims." *Brempong v. Chertoff*, No. 05-CV-733 (PCD), 2006 WL 618106, at *2 (D.Conn. Mar. 10, 2006).

alien challenging his detention under § 2241 is released during the pendency of his petition under an order of supervision, the petition is rendered moot. *See Baptiste v. Immigration and Naturalization Service,* 2006 WL 3050884, at *2 (E.D.N.Y. Oct. 23, 2006) ("Where petitioner was released pursuant to an order of supervision pending her removal, it was "clear that petitioner in the case at hand was challenging only the lawfulness of her detention. Further, it is hard to imagine any possible 'collateral consequences' of petitioner's detention. She has not indicated any such consequences to the court. Thus, as a result of her release, petitioner's application for relief is moot.") (citing *Williams v. I.N.S.*, No. 02-CIV-3814, 2005 WL 1994102, at *2 (S.D.N.Y. Aug. 18, 2005) (stating that petitioner "lacks any interest in the outcome of this suit inasmuch as the relief he has requested-release from detention-has already been afforded to him"); *Sayavong v. McElroy*, No. 00Civ.0922(WHP)(FM), 2003 WL 470576, at *3 (S.D.N.Y. Jan. 9, 2003) ("After his petition was filed, Sayavong was released from INS custody pursuant to an Order of Supervision which requires him to live at his home address in Rochester, New York. . . . [T]he only relief sought by Sayavong's petition has previously been granted by the INS. It follows that Sayavong's petition is moot.") (citing *Johnson v. Reno*, 143 F. Supp.2d 389,391 (S.D.N.Y. 2001) ( "A habeas corpus petition seeking release from (INS) custody is moot when the petitioner is no longer in [INS] custody."); *Mizell v. Attorney Gen. of the State of New York*, 586 F.2d 942, 947-48 (2d Cir.1978) (stating that the habeas petition of inmate who "asked for release from custody, and nothing more[,]" is moot once he is no longer in custody)).[3]

---

[3] Although the Second Circuit has not ruled on the issue in a published opinion, it has stated in an unpublished opinion:

> Petitioner . . . appeals from the judgment of the district court . . . finding his habeas petition to be moot. In that petition, [petitioner] challenged certain aspects of his immigration detention. . . . During the pendency of this appeal, another panel of this court vacated [petitioner's] order of removal. . . . As a result of this decision, [petitioner] was released from immigration detention. . . . [Petitioner's] release renders the issues presented in this appeal moot, and, we must dismiss his

Because the only relief Masoud sought from this Court was release from DHS custody, his habeas petition became moot upon his release under an order of supervision, which terminated his custodial detention. *Accord*, *e.g.*, *Sayavong v. McElroy*, 2003 WL 470576, at *3; *Baptiste v. Immigration and Naturalization Service,* 2006 WL 3050884, at *2. The documents appended to the Government's motion to dismiss "conclusively establish that the instant petition is moot because petitioner has already been granted the supervised release he seeks in his petition." *Jiang Xue Qiang v. I.N.S.*, 2006 WL 1026710, at *2.

## IV.   Conclusion

For the foregoing reasons, I recommend finding that Masoud's habeas petition no longer presents a "live" case or controversy for purposes of satisfying Article III, Section 2 of the United States Constitution. Therefore, I recommend that it be dismissed as moot. Because Masoud has not made a substantial showing of a denial of a constitutional right, I recommend that a certificate of appealability not issue. *See* 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."); *see also Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000). Therefore, the Court recommends that no certificate of appealability should issue with respect to any of petitioner's claims.

However, there is one caveat to the Court's recommendation. As noted above,

---

appeal.

*Edwards v. Ashcroft*, 126 Fed. Appx. 4 (2d Cir. 2005) (unpublished). Other circuit courts that have considered the issue are in agreement that, when a habeas petitioner challenges only the lawfulness of her detention, and she is subsequently released, her habeas petition may be dismissed as moot. *See Ali v. Cangemi*, 419 F.3d 722, 724 (8th Cir.2005); *Riley v. I.N.S.*, 310 F.3d 1253, 1256-57 (10th Cir. 2002).

respondents indicate that DHS has a pending motion to reopen removal proceedings against Masoud. Since there is the possibility that Masoud may eventually be returned to detention in DHS custody, I recommend that the dismissal Masoud's petition be without prejudice with leave to refile.

/s/ *Victor E. Bianchini*

_____
VICTOR E. BIANCHINI
United States Magistrate Judge

Dated: January 5, 2009
       Rochester, New York.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72.3(a)(3).

The District Court ordinarily will refuse to consider on *de novo* review arguments, case law and evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. *See*, *e.g.*, *Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to petitioner and respondent.

**IT IS SO ORDERED.**

/s/ *Victor E. Bianchini*

VICTOR E. BIANCHINI
United States Magistrate Judge

Dated: Rochester, New York
       January 5, 2009.